ILLINOIS CENTRAL RAILROAD COMPANY *v.* JOHNSON & FLEMING.

*(Jackson.    April Term, 1906).*

1. **DAMAGES.** For breach of contract according to the usual course, or in the contemplation of the parties, when.

Suer for the breach of a contract is entitled to recover damages which result from the breach according to the usual course of things, or such as may be reasonably supposed to have been in the contemplation of both parties at the time the contract was made as the result of the probable breach of it.  (*Post, p.* 632.)

Case cited and approved:  Hadley v. Baxendale, 9 Ex., 341.

2. **SAME.** Same.  Special damages must be shown to have been in the contemplation of the parties, when.

One who seeks to recover special damages for the breach of a contract, such as result from the cancellation of another time contract because of the delay of a common carrier in delivering freight within a reasonable time, must show that such damages were within the contemplation of both parties to the contract; otherwise, he can only recover such damage as, in the usual course of things, flow from the breach of the contract.  (*Post, pp.* 632-634.)

Cases cited and approved:  Railroad v. Cabinet Co., 104 Tenn., 568; Machine Co. v. Compress Co., 105 Tenn., 187; Chisholm v. Canopy Co., 111 Tenn., 204; Hadley v. Baxendale, 9 Ex., 341.

3. **SAME.** Same.  Same.  Statement of shipper insufficient to affect common carrier with notice of time contract that might be canceled for delay in delivering goods.

Statement of shippers of certain pipe and outfit for boring wells made to the railroad agent at the time of the shipment that the same was needed very badly, and that they were putting in another well at some place in Arkansas, does not give the railroad

Railroad v. Johnson.

notice that the shippers had a time contract which would be for-
feited in the event of a failure to deliver the pipe and outfit
promptly, or that they were boring the well for others, and not
for themselves, and was insufficient to charge the railroad with
the loss of profits occasioned by the cancellation of the time
contract for delay, and with the loss sustained in the purchase
of other appliances for work.   (*Post, pp.* 634-636.)

4. **SAME.** Same. Same. Same. Notice to common carrier,
   after shipment, of circumstances rendering special damages
   probable from delay, does not affect the original contract.
Notice to the common carrier, after the goods have been shipped,
   of circumstances which render special damages a probable con-
   sequence of delay, does not affect the original contract so as to
   render the carrier liable for such damages, although the subse-
   quent delay is unreasonable.   (*Post, pp.* 636, 637.)

Cases cited and approved:   Bradley v. Railroad, 94 Wis., 44;
   Railroad v. Belcher (Tex. Sup.), 35 S. W., 6; Smelting Co. v.
   Compress Co., 72 Ark., 275; Crutcher v. Railroad (Ala.), 85 S.
   W., 770, Am. & Eng. R. R. Cases (N. S., 39), 661.

5. **PRACTICE.** Question of notice of special circumstances as
   grounds for special damages for breach of contract is for jury,
   unless testimony is incontrovertible, and it is then for court.
Whether or not the common carrier had notice of the special cir-
   cumstances which are relied on as ground for the special dam-
   ages claimed is usually a question of fact for the jury to deter-
   mine, but this is not so, where the testimony with regard to
   such notice is incontrovertible, clear, and distinct, for it is then
   a question of law for the court.   (*Post, pp.* 637, 638.)

6. **DAMAGES.** Nature of goods shipped is insufficient to affect
   common carrier with notice of special circumstances rendering
   special damages probable from delay, when.
The mere delivery of iron pipe and other appliances for the bor-
   ing of wells to a common carrier for transportation is insuffi-
   cient of itself and by its nature to give notice to the carrier of
   116 Tenn.—40

the existence of a time contract held by the shipper, who is the consignee, for the boring of a well for another, which might be affected by delay in the delivery of such freight. (*Post, p.* 638.)

Cases cited and distinguished: Railroad v. Cobb, 64 Ill., 143; Railroad v. Ragsdale, 46 Miss., 458.

7. **COMMON CARRIERS.** Liable for usable rental value of that part of an equipment negligently delayed in delivery, but not for the whole equipment not included in the shipment.

A common carrier guilty of negligent delay in the transportation and delivery of iron pipes and other appliances intended for use in the performance of a contract for boring a well for another is liable for the usable rental value of the iron pipes and other appliances so shipped, but not for the rental value of the whole well boring equipment, where a part of the equipment was not included in the shipment. (*Post, p.* 639.)

8. **VERDICTS.** Not supported by the evidence of the usable rental value of an equipment, where only part of the equipment is involved, when.

A verdict based upon testimony that the net rental value of a well boring outfit is so much per day where a common carrier negligently delayed for a certain number of days the delivery of those parts of the equipment intrusted to it for transportation, where the other parts were not included in the shipment, is not supported by the evidence. (*Post, p.* 639.)

9. **COMMON CARRIERS.** Not converted into a tortfeasor, nor made liable in trover by consignee's refusal to receive a delayed shipment.

A consignee cannot, by declining to receive from the common carrier a delayed shipment, convert the carrier into a tortfeasor and hold him liable in trover for the value of the property. (*Post, p.* 640.)

10. **SAME.** Same. Consignee compelled to buy new materials because of delay of shipment cannot recover difference in value between shipment and cost of new materials after refusing tendered delivery of shipment.

Railroad v. Johnson.

The shipper and consignee of iron pipes and appliances for bor-
ing wells, compelled to purchase new pipes and appliances be-
cause of the common carrier's delay in delivering the shipment,
cannot after refusing to receive the delayed shipment when de-
livery is tendered, recover from the carrier the difference be-
tween the value of the refused shipment and the amount paid
for the new materials.  (*Post, p.* 640.)

FROM SHELBY.

Appeal from the Circuit Court of Shelby County.—
J. P. YOUNG, Judge.

COOPER & COOPER and CHARLES N. BURCH, for Rail-
road,

FLIPPIN & NEUHARDT, for Johnson & Fleming.

MR. JUSTICE BEARD delivered the opinion of the Court.

The defendant in error had a contract to bore a deep ·
well at Blytheville, in the State of Arkansas, and having
a part of the apparatus, used in doing such work in
Grenada, Mississippi, on the 23rd of September, 1903,
at that point delivered to the Illinois Central Railroad
Company, for shipment to Memphis, Tennessee, this
property which was consigned to their own order. On
the 2d of October, 1903, they were notified by their agents

of the railroad at Memphis, of the arrival of the car containing this shipment, and that upon the payment of the freight the same was subject to removal. Upon receiving this notice, the defendants in error, paid the freight that was due and demanded a delivery of their property. A diligent search was at once instituted for it, but it was not found within the yards of the company. Repeated, but fruitless, efforts were made for several days in succession to locate the car containing this property. Believing the property lost beyond recovery, the defendants in error went into the open market and supplied its place by the purchase of new material at a cost of about $655. This new material was shipped to Blytheville, to be used in conjunction with so much of the outfit as was already there in carrying out the contract which the defendants had for the boring of the well, but the parties with whom they had contracted declined to permit them to go on with the work, upon the ground that the time had already passed when by the terms of the contract the well was to be completed. The outfit shipped from Grenada was located by the railroad company on or about the 1st of November, 1903, and a delivery thereof was then tendered to the defendants in error. The tender was declined, and thereupon the present suit was instituted to recover the damages which the shippers alleged they sustained from the unreasonable detention of this property.

In the amended declaration, with very much more of detail than was found in the counts of the original

declaration, the complaint of the defendants in error is set forth. In this they allege that the portion of the outfit which was shipped by them from Grenada constituted an essential part of the whole which was necessary for the successful carrying out of the contract heretofore referred to, and that, as a result of the unreasonable delay in the delivery of the same, they were put to the necessity of replacing this property by the purchase and at the price already stated; that there was also entailed upon them a heavy expense in keeping a crew of men waiting to carry out their well-boring contract; that in the shipping of their material to Blytheville and reshipping it therefrom, after the cancellation of the contract, further loss was inflicted upon them. They allege also a loss of profit from this cancellation of $1,000.

In the conclusion of this pleading is the following paragraph: "Plaintiffs further aver that they have a right of action against the defendants for the loss of said articles and delay in their shipment and prompt delivery; for the cost of supplying same; the freight paid thereon; the loss of the profit in said contract at Blytheville; the loss of shipping and reshipping to the town of Blytheville; and the cost of keeping said crew of men from the time said machinery and articles should have been delivered by the defendants to the time of the cancellation of said contract."

Upon proper pleas this case went to the jury, which returned a verdict as follows: "We, the jury, find damage for the plaintiff of $880, for rental of equipment, and

$166 additional cost of pipe, etc., with interest at six per cent from October 2, 1903, to June 19, 1905." Both parties were dissatisfied with this verdict, and made motions for a new trial, which were overruled by the trial judge, who thereupon entered up a judgment in accordance with its terms. Both parties have prosecuted the case to this court, and have assigned errors upon the action of the trial judge.

It is unnecessary to set out the several assignments of error, as it is conceded by the respective counsel that all, save one, are resolvable into the single question, what is the proper measure of damages in this case? — it being conceded by the plaintiff in error that for its failure to deliver in a reasonable time the defendants in error are entitled at least to recover nominal damages.

It was insisted in the lower court, and the insistence is repeated here, that under the evidence adduced, and upon the rule of law invoked by the defendants in error, they were entitled to recover all the special damages claimed in their declaration. It is conceded by their counsel, at least by implication, that their right to a recovery of these damages is conditioned upon notice having been brought home to the railroad that a breach of its contract for prompt delivery would result in a loss to them such as is here sued for. The evidence upon which they rely as showing the existence of such notice is found in the testimony of Mendenhall, who, as the agent of Johnson & Fleming, delivered this outfit to the railroad company at Grenada for shipment. He testified

Railroad v. Johnson.

that, when he made the delivery, he said to the agent of the company that the defendants in error needed the pipe (constituting a part of this outfit) very badly, that they were putting in another well at some place in Arkansas, and they wanted to ship this pipe in a boat. The attention of the witness is again called to this matter and he is asked the following question: "Please state to the jury precisely what you said to the agent and what the agent said to you. Can you recall precisely what you said to the agent and what the agent said to you?" When he made the following answer: "Well, when I went up to get the car, I told the agent we'd like to have a drop-end door car to get this pipe in, and I remember distinctly he could not give me one, so I put up a derrick to load this pipe with, and remember pulling the pipe with a sliding line, and when I went to get the bill of lading from him I told him we needed this pipe very badly. . . . Mr. Johnson was there the day before, and wanted this pipe right away, and when he told me he wanted this pipe he told me to put this engine in. I broke it about a month before, and he wanted to have it overhauled and use it on another job, and I told the agent we wanted this pipe right away, to give me a car as quick as he could, and he said 'all right,' and gave me a bill of lading, and the car was shipped out that same night." He reiterates, in answer to a question immediately succeeding, that this was all he told the agent.

The rule which the plaintiffs below invoke, and upon which they rely in this court, is that announced in *Had-*

*ley* v. *Baxendale,* 9 Ex., 341. This rule has been so frequently quoted and applied in the opinions of this court that it is unnecessary to set it out literally here. It is sufficient to say that under this rule a party who sues for a breach of contract is entitled to recover damages which result from that breach according to the usual course of things, or such as may be reasonably supposed to have been in the contemplation of both parties at the time the contract was made as the probable breach of it. Under the latter branch of the rule it has been universally held that in order to recover special damages, such as are claimed by the defendants in error in this case, the party against whom recovery is sought must have had such notice as would give him to understand that a breach of the contract would probably result to the other party in these special damages. In *Machine Company* v. *Compress Company,* 105 Tenn., 187, 58 S. W., 270, where this rule was enforced, it was insisted by the plaintiff in error, against whom it was applied, that granting the authority of the rule, yet that was not a proper case for its application, because the plaintiff in error was not sufficiently put on notice of the extraordinary damages it might incur from a breach of the contract. To this the court made reply: "No case holds, in order to put this rule in operation, that the party invoking it must have said to the other party at the moment of making the contract he would claim these damages for a breach, but it may be conceded the knowledge must be brought home to the party sought to be charged under

Railroad v. Johnson.

such circumstances, that he must know that the person he contracts with naturally believes that he accepts the contract with a special condition attached . . . . or, as is said by Mr. Sedgwick, 'notice must be more than knowledge on the defendant's part of the special circumstances. It must be of such a nature that the contract was, to some extent, based upon the special circumstances.' "

After thus interpreting the rule, the court proceeded to examine the testimony on this point, and sets the same out in the opinion, from which it distinctly appears that the agent of the machine company, for whose default the suit was brought, thoroughly understood at the time of taking the contract the purpose that the compress company had in view in making the contract, and the necessity of strict compliance with the same. It was upon this testimony, which clearly showed that the machine company was put on distinct notice of the consequences of a breach of its contract, that the rule of special damages was enforced in that case. This is equally so as to the case of *Railroad* v. *Cabinet Company,* 104 Tenn., 568, 58 S. W., 303, 50 L. R. A., 729. There the railroad was held liable for special damages resulting from negligent delay in delivery of goods, because at the time of the receipt of the goods for transportation it had notice that they were shipped upon a penalty contract. These, and many other cases, are reviewed in *Chisholm* v. *U. S. Canopy Co.,* 111 Tenn., 204, 77 S. W., 1062. So it may be said that it is settled in this

State that one who seeks to recover special damages for the breach of a contract must be prepared to show that such damage was within the contemplation of both parties to the contract, and that in the absence of notice the party complaining must content himself with such damages as in the usual course of things flow from the breach of such a contract.

The fact out of which the controversy grew in *Hadley* v. *Baxendale* was that plaintiffs were the owners of a steam mill in which there was a broken shaft. This they gave to the defendant carrier to take to the engineer to serve as a model for a new one. On making the contract the defendant's clerk was informed that the mill was stopped and that the shaft must be sent back immediately. He delayed its delivery. The shaft was kept back in consequence, and in an action for breach of contract the plaintiffs claimed as specific damages the loss of profits while the mill was kept idle. It was held in that case that the carrier could not be made responsible to such an extent, as it did not appear that he knew that the want of the shaft was the only thing which was keeping the mill idle. In line with that case, and bottomed on it, are many English and American cases all holding to the same view. These cases are referred to and cited as authority for the text to be found in Sedgwick on Damages, Sutherland on Damages, and other works on their general subject.

In view of the rule and of the many illustrations of it to be found in the various cases which we have had

Railroad v. Johnson.

occasion to examine, we are satisfied that it cannot be said that it was within the contemplation of these parties at the time of the delivery of this outfit for shipment at Grenada that a breach of the contract of prompt delivery would visit upon the carrier the heavy special damages which are claimed in this lawsuit.  If the witness Mendenhall is correct when he undertakes to give the precise or exact statement which he made to the agent of the railroad when this outfit was shipped—that this was needed very badly—then, as a matter of course, such statement gave no notice whatever to the carrier that there was a time contract made by Johnson & Fleming for the boring of a well at Blytheville, or any other contract which would be disappointed by a failure of prompt delivery of this material.  But, referring to the testimony of the witness in another place, where he says he told the agent of the railroad that the parties were needing the pipe very badly, that they were putting in another well some place in Arkansas, no more, do we think, was the carrier put on notice.  By this statement the carrier was not made to understand that these consignees, Johnson & Fleming, had a contract for the boring of a well in Arkansas which would be forfeited in the event of a failure to promptly deliver.  In fact, the railroad was not given to understand by this statement that these parties were boring a well for other persons than themselves.  Upon such a loose and indefinite statement made to the carrier, it would seem upon all the authorities, that for the breach of the contract upon his

part the shippers would be debarred from a recovery of special damages, and would be compelled to content himself with such as would naturally flow from a breach. But it is insisted that whatever may be the defect as to notice at the time of delivery, yet the railroad authorities were notified distinctly at Memphis, while the search was being made for this lost outfit, that these parties did have a time contract for the boring of a well in Arkansas, and that this material was essential to the doing of the work, and that the delay in its delivery would likely result in the cancellation of the contract and the heavy damage for which they now seek a recovery. We think the law is otherwise. Notice to the carrier, after the goods have been shipped, of circumstances which render special damages a probable consequence of delay, does not affect the original contract so as to render the carrier liable for such damages, although the subsequent delay is unreasonable. *Bradley* v. *Chicago, etc., R. R. Co.,* 94 Wis., 44, 68 N. W., 410; *Missouri, etc., R. Co.* v. *Belcher* (Tex. Sup.), 35 S. W., 6; *Hooks Smelting Co.* v. *Planters' Compress Co.,* 72 Ark., 275, 79 S. W., 1052.

In *Crutcher* v. *Choctaw, etc., R. Co.* (Ark., 1905), 85 S. W., 770, Am. & Eng. R. R. Cases (N. S., 39), 661, the court says: "It is contended by appellant that notice given to the carrier, after the making of the contract and shipment of the property, of the special circumstances, is sufficient to charge the carrier with the indorsed damages. This is not correct. The notice must

be given at the time, or before, the making of the contract. In *Hook Smelting Co.* v. *Planters' Compress Co.,* supra, the court said: 'For it is well settled that, in order to make a party to the contract liable for special damages, he must have notice of the special circumstances at or before the making of the contract. He must, at the time he receives notice of the facts showing that upon a breach he will be subject to special damage, be free to insist upon such additional compensation as he may choose to demand. But, if the price for the work, or for the part in which he is most interested, has been fixed so that he must go ahead with the contract, then notice of the circumstances will have no effect to enlarge his liability."

While it may be true, as stated in the citation found in the brief of counsel for Johnson & Fleming from 5 Am. & Eng. Encyc. of Law, p. 394, that whether or not the carrier had notice of the special circumstances which are relied on as a ground for the damages (special) claimed, is usually a question of fact for the jury to determine. This, however, is not so where the testimony with regard to the notice is incontrovertible and is clear and distinct. It is then a question of law for the court. It has been quite often held that contributory negligence is ordinarily a question to be determined by a jury, but when the testimony on the subject bears but one interpretation, which all reasonable minds would accept, then it becomes a question of law for the court. In the present case the evidence already

set out is uncontroverted, and leaves nothing for the jury on the question of notice to be determined. It appeals alone to the court to be settled as a question of law.

But it is said by the same counsel that the nature of this shipment was of itself equivalent to notice. We are unable to see how the mere delivery of iron piping, etc., would have suggested in the remotest degree to the agent of the railroad the existence of a contract for the boring of a well. For their contention on this point Johnson & Fleming, through their counsel, refer to *I. C. R. R. Co.* v. *Cobb*, 64 Ill., 143. In that case, however, it appeared that the defendant carrier knew that certain corn intrusted to it for transportation was to be sold to the government at a certain price. The corn was damaged en route through a delay in transportation, and the plaintiff was obliged to sell it at the same price for which he had bought it. The court held that the measure of damages recoverable was the difference between what he received for the corn and the price at which he had contracted to sell it. It will be seen from this statement that the carrier at the time of the receipt of the corn had actual knowledge of the contract of sale, and was properly chargeable, therefore, upon that knowledge with the special damage resulting to the plaintiff from failure to promptly transport and deliver. We are equally unable to find any authority for the contention of the plaintiff below in the case of *Vicksburg, etc., R. Co.* v. *Ragsdale*, 46 Miss., 458. On the

part of the plaintiff in error it is insisted that the verdict in the present case is without material evidence to support it.  As has already been said, the piping and tools which had been shipped from Grenada, Mississippi, to M'emphis, Tennessee, constituted a part of a well-boring outfit belonging to Johnson & Fleming; the remainder of the outfit being at that time at Blytheville, in Arkansas.  It will be seen from the verdict heretofore set out that the jury allowed the plaintiffs below $880 for rental of equipment.  The witness Johnson stated that the net rental value of a well-boring outfit was $22 per   day.  The jury evidently allowed these parties as the rental this amount for the forty days between the date when the property shipped should have been delivered and the time of its tender; that is, forty days.  In other words, they allowed a rental value for the complete outfit when this railroad had never in its keeping any save a part of that outfit, and as to that part the witness Johnson distinctly testified that taking it apart from the whole it had no rental value whatever. So the counsel of the plaintiff in error properly moved the court, upon this statement, to exclude this testimony from the jury.  This the court declined to do, and in so declining was in error; for it is apparent that the railroad for its delay was only liable for the usable rental value of the property which it had in keeping.  Excluding this testimony, the verdict upon this point was left without any material evidence to support it.

In addition to the railroad being only liable for the

usable rental value of the property, which it received and failed to deliver within a reasonable time, if any such value can be made out, we think it clear it was not liable for the difference between the value of the property which it had in charge and the amount which Johnson & Fleming had to expend for new machinery to supply its place. It is well settled that the consignee cannot, by declining to receive from the carrier a delayed shipment, convert him into a tort-feasor and hold him liable in trover for the value of the property. If this is so, we cannot understand how, by indirection, he can reach the same result as he would if allowed to reject the shipment and charge the carrier with the difference in value of the rejected stock and the amount paid for the new. The evidence on this point was incompetent, and the verdict in favor of plaintiffs below for $166 was unwarranted.

The judgment of the lower court is reversed, and the cause is remanded.