ALL v. JOHN GERBER CO. et al.—252 S. W. (2d) 138.

Western Division at Jackson.   March 10, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

136

Thomas F. Turley, Jr., of Memphis, for plaintiff-in-error.

Roane Waring, Jr., Allen Cox, Jr., and Erich Merrill, all of Memphis, for defendants-in-error.

SWEPSTON, J. Mrs. All sued the defendant for damages for personal injuries consisting of burns on her head suffered while defendants were administering a beauty treatment known as a "permanent wave".

Her husband sued for loss of "her services, society, companionship and consortium"; for expenses incurred on account of the injury to his wife; and in effect for mental anguish suffered by him as a result of "witnessing the results of his wife's painful injury" and mental anguish to be suffered in the future in being reminded constantly of his wife's misfortune by the permanent scars.

The jury returned a verdict in favor of Mrs. All for $3,500 and for Mr. All $300. On motion for a new trial on suggested remittitur the verdict for the wife was reduced to $2,500.

Both plaintiffs have appealed in error, she seeking a restoration of the verdict and he seeking a new trial for inadequacy of the verdict in his suit on account of certain alleged errors.

There is no appeal by defendants.

The assignments of error raise the following questions on the husband's appeal:

(1) The court charged that the damage to him would be the amount of doctors' bill incurred to relieve the wife's injuries whereas he was entitled to a recovery for loss of consortium;

(2) The failure to charge res ipsa loquitur.

(3) The court should not have charged contributory and remote negligence.

The Court's charge was that the damages "would be measured by the amount he has sustained for doctors bills in an effort to relieve his wife of her injuries". There was no evidence of other expense, but the complaint is the failure to charge loss of consortium.

The latter two questions will be treated together.

Counsel insists it was prejudicial, to the husband's case as to the amount of damages awarded by the jury, not to charge res ipsa loquitur and to charge contributory and remote negligence.

We do not think there is any merit to this proposition for several reasons.

█ A verdict consists of two separate and distinct aspects—liability and amount. Board of Mayor, etc. of Covington v. Moore, 33 Tenn. App. 561, 232 S. W. (2d) 410.

█ The general rule is that a party may not appeal from a verdict or decree in his favor, since he is not aggrieved thereby but there are various exceptions, one of which is that he may appeal if the judgment is for less than he was entitled to. 4 C. J. S., Appeal and Error, Sec. 183(3), p. 359; 2 Am. Jur. 945, Sec. 153.

█ Upon such appeal, however, he can be heard to complain of only such errors as have prejudicially affected the assessment of damages. O'Quinn v. Alston, 213 Ala. 346, 104 So. 653, 39 A. L. R. 1263; Maxwell Hardware Co. v. Foster, 207 Cal. 167, 277 P. 327.

This for the reason that the appeal is not from the finding of liability, but from the assessment of damages.

█ When we examine the evidence, it is quite apparent that res ipsa loquitur has no application to the

case in any aspect because the instrumentality was not under the exclusive control of defendants.

Mrs. All had obtained a permanent wave of this type twice before at Gerber's Department Store. The same type of machine was used on all three occasions and it was only on the third she suffered burns.

The operation consists of rolling the hair into numerous curls and putting a clamp on each curl and then applying heat by electricity for a very few minutes through these clamps which are connected to a base through which the current is supplied. Beforehand test curls are made and heat applied in order to determine the duration of the application of heat for the proper results on the particular type of hair. In this case the period was fixed at six or seven minutes. There is no regulator or thermometer on the machine and the degree of heat remains constant during the operation. Rubber pads and cotton serve as insulators to prevent the heat from burning the scalp or skin; the thinner the insulation, the closer to the scalp the curl is formed resulting in a more lasting "permanent".

The *only way the operator* can know whether too much heat is reaching the scalp or skin is by *what the customer* tells the operator.

In this case it appears from the plaintiff's testimony that she did tell the operator several times that she was getting too much heat and each time the operator took steps to relieve her. In fact, she testified, R. 88, as follows:

"Q. And she was there the entire period of time? A. Yes, an operator does not leave you.

"Q. She stayed right there with you like any normal operator would have done. A. Yes.

"Q. Then you say of course after the seven minutes was up and she started unrolling the curls, you suggested she start in the back instead of the front. A. Yes; I suggested she take those up immediately because it was still burning.

"Q. And that is the only thing she did not do to suit you, wasn't it? A. That is right."

█ █ Moreover, even had res ipsa loquitur been applicable, its function is to supply for the benefit of the plaintiff a presumption of negligence of defendant; it does not exclude the defense of contributory negligence as a bar to plaintiff's suit, or of remote negligence in mitigation of damages, which we think were properly charged in this case.

█ That the charge as given and the refusal to charge res ipsa loquitur was not prejudicial on the question of damages is demonstrated by the fact that under the charge as to damages being measured by the amount of the doctors' bills the jury gave $300 when only about $125 was proved currently with the suggestion that some small further medical attention might be necessary.

This brings us to the first question above stated: that is, should the court have charged further that the husband was entitled to recover for loss of consortium?

The record does not reflect whether he failed to give this in the charge because he was of opinion there was no evidence of such loss or because he thought there could be no recovery for same.

It is hardly necessary to say that if there was no evidence of such loss, it should not have been charged as an element of damages, but the manner of proving same depends upon what element of the broad term "consor-

tium'' is sought to be proved, as will shortly appear herein.

■ That a recovery may be had for loss of consortium, if properly proved, would seem to be beyond cavil according to most of the authorities and under our own cases despite the possible misconstruction of the opinion in Ill. Cent. Ry. Co. v. Solinsky, 12 Tenn. App. 389, 407.

In City of Chattanooga v. Carter, 132 Tenn. 609, 179 S. W. 127, the Court referring to the act emancipating married women said:

"The act does not deprive either the husband or wife of the conjugal relationship, with its duties and rights."

In Johnston v. Southern Ry. Co., 155 Tenn. 639, 645, 299 S. W. 785, 55 A. L. R. 932, the Court referring to the holding of the case next above cited here used the expression "loss of services", obviously broadly as a synonym for consortium, because loss of services both in the narrow sense of a servant as well as in the broader aspect of those intangible rights and duties of the conjugal relationship are separate elements of "consortium".

Prosser on Torts, page 917, Section 101, treating of actions for interfering with the family relationship, such as for criminal conversation, alienation of affections, etc., states:

"The husband's interest in his relation with his wife first received recognition as a matter of her services to him as a servant. Over a period of some centuries it took form as something considerably broader than this, which was given the name "consortium". Consortium was said to be made up of a bundle of legal rights to the alliterative trio of the services, society and sexual intercourse of the wife.

To these elements of the modern law has added a fourth, that of conjugal affection. The rights of the husband extend to all four; and while it is seldom that the defendant's conduct interferes with only one of them, it now seems clear in nearly all jurisdictions that such interference with any one will be sufficient as a foundation for the action. The loss of services, essential at the beginning, no longer is indispensable, and is now only one element upon which the action may be based.''

The same text, page 940, section 102, treating of actions for injuries to member of the family, states:

''The element of 'loss of services' has much the same history here as in the case of direct interference with the family relations. Originally it was indispensable to the cause of action, although the 'services' of the wife were defined rather broadly to include her general usefulness, industry, frugality— and attention in the home. Once such a loss was proved, however, recovery soon was extended to cover damages for deprivation of the society, fellowship and affectionate relations of the wife or child and the intercourse of the wife  *  *  *''.

Consortium is likewise understood in the two cases of Stepp v. Black, 14 Tenn. App. 153, 172 (criminal conversation, alienation of affections and seduction actions); Darnell v. McNichols, 22 Tenn. App. 287, 122 S. W. (2d) 808.

We have dealt with this at some length in order to give the proper construction of the opinion in the Solinsky case, supra, which has frequently been urged upon trial courts as holding that no recovery may be had for loss of any but services *as a servant,* which may and must be

proved with exactness. But let us analyze the case and see just what was decided.

A young married woman lost an arm in an accident. The husband attempted to prove that she had been rendered incapable of having sexual intercourse, but when it developed that as a result of the same accident he had also been rendered incapable, the claim for this aspect of loss of consortium was waived by the husband.

Claim was made also for loss of services *as a servant,* but no evidence was offered to sustain this aspect of damages. Therefore, the Court of Appeals said that since such damages were susceptible of exact proof of which there was none, this aspect must fail. The opinion then pointedly said that as to the aspect of loss of services of an intangible sort, such as the society of the wife and her making of an attractive home, etc., the evidence showed the wife to be as capable in this regard after the accident as before.

We think, therefore, that the case does not hold that loss of such intangible services must be proved with exactness, nor does it hold that loss of consortium is not an element of damages, but only that loss of services as an ordinary servant can and must be proved with exactness.

If we are in error as to the import of the Solinsky case, then that opinion is contrary to all other statements and intimations to be found in other Tennessee cases and to the great weight of authority. 133 A. L. R. 1156 et seq.; Golden v. Greene Paper Co., R. I., 116 A. 579, 21 A. L. R. 1517 et seq.

Now, as to the proof of loss of those intangible services which do not have an exact market value such as do the services *as a servant,* but which do have a money

value, the cases in the above A. L. R. citations furnish the formula esp. 21 A. L. R. 1518.

The value depends upon ''what the evidence shows to have been the home life and its surroundings and conditions, and the part the wife had to do with its making and keeping, in each case''. ,

''The best method of ascertaining such values known to the law is to obtain the consensus of opinion of twelve jurors; * * *''.

Interesting in connection with this method of proving the value of these intangibles is the case of Knoxville Railway & Light Co. v. Davis, 3 Tenn. Civ. App. 522, 530-532.

This was an action for death of Mrs. Davis by wrongful act of another under Code Section 8240. The Court said:

''Viewing the life of Mrs. Davis, in the light of all the surrounding facts with the object of ascertaining its pecuniary value to her husband, it must be borne in mind that her services in her own home where she was interested to the extent of voluntarily taking on herself the duties of housekeeper and cook and seamstress, etc., were vastly more valuable than the services of mere employed or hired help could have possibly been. * * *'' 3 Tenn. Civ. App. 531.

A recovery of $10,000 was approved.

█ Now, as to the evidence in the instant case, there is some substantial evidence that the wife was not able for a period of about six weeks to accompany her husband on social engagements, nor to attend to the affairs of her son's fraternity, of which she was the ''mother'' and, briefly stated, that her usual routine about the home was only partially impaired. We, therefore, think the jury should have been charged on the loss of these other

elements of consortium, although they would have justified only a small additional recovery.

Whether it can be held to be reversible error, however, is another question.

■ Counsel tendered a request which was refused by the Court and properly so, because it erroneously contained in addition to, or as an element of, consortium "his own mental anguish proximately caused by her suffering consequent upon her injury".

■ While the opinion in Stepp v. Black, supra, approved an allowance for mental anguish in that type of case, it appeared that the wronged husband suffered physical impairment also. Without further discussion of that type of case, it is clearly not an element of damages in the husband's suit for negligent injury to his wife or other member of the family, unless it be accompanied by, or result in, physical injury to the husband, as will appear from the discussion in Colsher v. Tenn. Elec. Power Co., 19 Tenn. App. 166, 179-181, 84 S. W. (2d) 117, citing Nuckles v. Tenn. Elec. Power Co., 155 Tenn. 611, 299 S. W. 775, which is cited also in Prosser on Torts, p. 218, n. 81, which discussions need not be here repeated.

■ The Appellate Courts will not reverse for failure to give a requested instruction unless the same correctly states the applicable law. Llewellyn v. City of Knoxville, 33 Tenn. App. 632, 232 S. W. (2d) 568.

■ In the absence of a correct request, the Court will not reverse merely for meagerness, inadequacy, etc., alone.

■ It is only where the error in the charge as given is of such a nature as to mislead the jury on a material question in the case that the error will be corrected. McClard v. Reid, 190 Tenn. 337, 339, 229 S. W. (2d) 505.

While we are of opinion that loss of consortium is a material element of damages in any case of this nature and the nearer the loss approaches totality, even for a temporary period, the more material it becomes as an element of damages, yet with no intention of applying the rule of the de minimis nor of disregarding the legal rights of the husband, we think this case should not be reversed, on the ground that substantial justice has been done. The recovery allowed him by the jury and approved by the trial judge is more than twice the amount the jury should have allowed on the evidence. If the element of consortium had been submitted to the jury, only a very small amount for the partial and temporary loss of consortium would have been warranted on the evidence, certainly not more than the excess the jury allowed above the amount of the doctor's bill actually proved, that is from $150 to $175 excess.

There is, therefore, no affirmative showing of prejudice from the entire record as required by the Act of 1911, Code Section 10654, requiring a reversal.

We accordingly overrule all assignments of error except the first one going to this question, but the judgment below is affirmed.

A judgment will be entered here for $300 with interest from June 29, 1951 and in view of the disposition we have made of the appeal costs are assessed against defendants in error.

As to the wife's appeal seeking a restoration of the remittitur, the evidence shows that she had a third-degree burn on the back of her head, one back of the left ear and one back of the right ear; that third-degree burns go deeper than the skin and, in the doctor's opinion, all three spots will leave permanent scars, on which hair will not

grow; that all three spots are just at the edge of the hair line; that the period of healing is from six to ten weeks; that the healing process is not too painful, but the sloughing off of the burned tissue before it starts healing is quite painful and when the scar tissue begins forming there is a tightness in it which is felt when the head is moved; that it takes sometimes a year or two for complete absorption of the scar tissue and tends to make the patient nervous; that he treated her every day from October 24 to November 27.

As to the appearance, Mrs. All testified at the trial that the largest spot was the one on the back of her head of about the size of the first joint of her thumb, which shows unless she wears her hair down somewhat on her neck and that all spots can be concealed by arranging her hair suitably; that she suffered pain, nervousness and lost sleep following the injury and had an upset stomach.

She was not employed for wages or in business. She is a housewife doing her own work.

In view of the fact, however, that she appeared before the jury and the trial judge, an advantage we do not have, that the judge, who is of considerable experience judicially, has eliminated what he conceived to be the excessiveness in the verdict, and since there is otherwise no apparent inadequacy to us, we do not feel warranted in disturbing his judgment.

"There is an added weight to the judgment of the trial court when, as here, the circuit judge, by way of remittitur, reduced the amount of the damage fixed by the jury." Ezell v. Post Sign Co., Inc., 30 Tenn. App. 256, 205 S. W. (2d) 13, 15; Smith v. Sloan, 189 Tenn. 368, 377, 225 S. W. (2d) 539, 227 S. W. (2d) 2.

The assignment of error is overruled and judgment will be entered here for $2,500 with interest from July 29, 1951 with costs against plaintiff-in-error.

Anderson, P. J., and Baptist, J., concur.