ODRE DUNN v. ALABAMA OIL & GAS CO., Inc., et al.
—299 S. W. (2d) 25.

Middle Section. November 30, 1956.

Petition for Certiorari denied by Supreme Court, March 8, 1957.

W. P. Flatt, W. P. Flatt, Jr., and E. A. Langford, Cookeville, for plaintiff.

Jim Camp, Scott Camp, and Lucius H. Camp, Sparta, for defendants.

FELTS, J.   This action was brought by Odre Dunn against Alabama Oil & Gas Co., Inc., J. E. McKee, H. E. McKee, and Walter Howell, to recover for expenses and loss of the services and consortium of his wife, alleged to have been caused by defendants' false arrest and mali-

cious prosecution of her upon a charge of felony, passing a bad check in the sum of $600.

A voluntary nonsuit was taken as to defendants H. E. McKee and Walter Howell, and at the close of the evidence for plaintiff the Trial Judge directed a verdict for the other two defendants, Alabama Oil & Gas Co., Inc., and J. E. McKee. Plaintiff's motion for a new trial was overruled, he appealed in error, and insists that the evidence made a case for the jury.

Evidence for plaintiff was that he and his wife, Odell Dunn, had their home at Sparta, Tennessee, she working in a shirt factory there and he temporarily working in Detroit. She owned a home and considerable other property in Sparta, and had a savings account in a bank there, and was a person of excellent character and good reputation. The Alabama Oil & Gas Co., Inc., was owned principally by J. E. McKee, its President, and H. E. McKee, its Secretary and Treasurer. It had leased a filling station in Sparta to Walter Howell, who was operating the station.

In May 1954, Howell, hearing that plaintiff desired to find employment in Sparta, began negotiations with Mrs. Dunn and plaintiff to sell plaintiff this filling station. Howell came to their home in Sparta, had a conversation with her, and then a long distance telephone conversation with plaintiff, who was then in Detroit. Howell led Mrs. Dunn to understand that he and her husband had closed the trade for the filling station, and she and plaintiff seem to have taken over its operation.

The Alabama Oil & Gas Co., Inc., the lessor, was supplying gasoline to the filling station on the basis of its

lease. On May 18, 1954, it delivered to the filling station gasoline and other supplies and rendered an invoice to "Odre Dunn" for $621.17. In payment of this, Mrs. Dunn gave J. E. McKee $21.17 in money and her check payable to the Alabama Oil & Gas Company for $600.

This check was dated May 18, 1954, drawn on the First National Bank at Sparta, where Mrs. Dunn had a savings account, and was signed: "Mrs. Odre Dunn Sav". Mrs. Dunn thought this check would be paid by the bank from her savings account. But not having the savings book presented, the bank declined payment, and returned the check.

Meanwhile, plaintiff had come to Sparta and a controversy had developed as to whether the trade for the filling station had been consummated. While this matter was not fully developed in the evidence, it does appear that plaintiff and his wife declined to proceed further in the transaction and withdrew from it. J. E. McKee, President of the Alabama Oil & Gas Company, Inc., asked Mrs. Dunn to pay this check and was pressing her for payment. She declined to pay it, since she and her husband considered that they had not bought the filling station and had got nothing of value in the transaction.

So, on May 25, 1954, J. E. McKee went before the Judge of the General Sessions Court at Sparta, made an affidavit charging that Mrs. Dunn was guilty of the offense of passing a bad check, and procured a criminal warrant to be issued for her arrest. J. E. McKee went with the Sheriff to the shirt factory, and the Sheriff there arrested her upon this warrant, and took her before the General Sessions Judge.

She was first taken to his office, later taken before him in the court house, and gave bond to appear before him the next day. She testified that he told her that, by giving this check for $600 which had not been paid, she was guilty of a serious crime, a felony for which she could be sent to the penitentiary; and that it would be best for her to pay the check. She believed these statements, went to the bank with her savings book, withdrew $600, and delivered it to the judge to take up the check.

She withdrew this money and paid the check because of these statements of the General Sessions Judge and also upon the understanding with J. E. McKee that she would not be further prosecuted—"I wouldn't be sent to any penitentiary". The General Sessions Judge thereupon entered a judgment finding her not guilty of the felony charged against her and discharging her; and that was the end of the prosecution.

As stated, she was a person of excellent character and good reputation and had never before been arrested or accused of any offense. When the Sheriff, accompanied by J. E. McKee, read the criminal warrant to her and arrested her at the shirt factory, she was greatly embarrassed and humiliated, and upon being charged with a felony she was so frightened and terrified at the prospect of being sent to the penitentiary that she became very nervous, emotionally upset, and so sick that she was forced to go to bed and put herself under the care of doctors.

This prosecution against Mrs. Dunn was brought under our statute, 1932 Code sec. 11157; T. C. A. sec. 39-1904, which is familiar and need not be quoted. It provides in substance that any person who shall, with *"fraudulent*

intent'', obtain money, property, or anything of value, by his check, shall be punishable as for larceny, unless the check is paid "within ten (10) days after *written* notice is mailed to" him at his last known address.

No written notice was given Mrs. Dunn under this statute, and, therefore, she could not have been guilty of any offense. Under this statute the elements of the offense are: (1) the issuance of the check, *"with fraudulent intent";* (2) the obtaining of money by it, etc.; (3) the failure of the drawee to pay it after demand made; and (4) failure of the drawer to pay it "after the *written* notice" is given him as required by the statute. State v. Crockett, 137 Tenn. 679, 195 S. W. 583; Jones v. State, 197 Tenn. 667, 277 S. W. (2d) 371.

■ It is true that J. E. McKee, President of the Alabama Oil & Gas Company, Inc., was trying to force Mrs. Dunn to pay her check to the Company, and in this way he gave her actual oral notice that the check had not been paid by the drawee bank. But this provision of the statute for written notice is mandatory and cannot be satisfied with actual notice. Payne v. State, 158 Tenn. 209, 12 S. W. (2d) 528. In the absence of such written notice, there was no crime. Hunter v. Moore, 38 Tenn. App. 533, 539, 276 S. W. (2d) 754, 756; State v. Crockett, supra; Jones v. State, supra.

Upon this evidence we think the jury could reasonably find that J. E. McKee, President of the Alabama Oil & Gas Company, Inc., was acting as its agent and was trying to enforce payment by Mrs. Dunn of her check to the Company; that it was for this purpose that he brought and prosecuted the criminal proceeding against her; and that this prosecution of her upon the charge of felony

was without probable cause and with malice; and, of course, it was terminated in her favor.

■ The requisites of probable cause are: (1) the accuser must believe the accused did the act charged; (2) such belief must be reasonable—based on facts and circumstances which would excite that belief in the reasonable mind; and (3) the act must in law constitute the crime charged, with an exception not here material. Hall v. Hawkins, 24 Tenn. 357, 359; F. W. Woolworth Co. v. Connors, 142 Tenn. 678, 222 S. W. 1053; Restatement, Torts, Vol. 3, sec. 662; Street, Foundations of Legal Liability, Vol. 1, pp. 326-331; Annotation, 65 A. L. R. 225, 243.

"A person's belief that certain existing facts constitute a crime or wrong, when they in reality do not, does not justify the institution of proceedings against another, and such a belief will not shield from liability the person bringing the action." Annotation, 65 A. L. R. 243. To same effect, see Hall v. Hawkins, supra.

We think the jury could have found that when J. E. McKee brought this charge of felony against Mrs. Dunn, he knew no written notice had been given her, and the facts within his knowledge negatived his charge against her; and that he commenced and carried on the prosecution without probable cause.

■ Malice may be inferred from want of probable cause. It need not be ill will, but may be any motive other than a purpose in good faith to bring an offender to justice. Malice may be inferred from a motive to enforce payment of a debt or the doing of any other act the prosecutor wishes done. Poster v. Andrews, 183 Tenn. 544,

551, 194 S. W. (2d) 337, 340, 3 Rest., Torts, sec. 668; Thompson v. Shulz, 34 Tenn. App. 488, 494, 240 S. W. (2d) 252.

So we think the jury could have reasonably found that defendants, Alabama Oil & Gas Company, Inc., and J. E. McKee, prosecuted Mrs. Dunn upon this charge of felony without probable cause and with malice; that they became liable to her for the damages thus caused her and liable to her husband; the plaintiff, for the damages caused him; and that their tort to her had resulted in illness and incapacity on her part and in his loss of her services and consortium.

■ At common law an injury to a married woman gave rise to two causes of action: (1) her action for her personal injuries, and (2) her husband's action for damages to his marital interests—his loss of the wife's services and consortium. McCormick on Damages, 330-334; Prosser on Torts (2nd ed.) 698-701.

"Any tort resulting in physical injury or incapacity of the wife or child is sufficient to serve as a basis for such an action: assault and battery, malpractice or other negilgence, the sale of habit-forming drugs, injuries inflicted by dangerous animals and even false imprisonment and malicious prosecution or libel and slander, when they result in deprivation of services." Prosser on Torts (2nd ed.) 698.

This common-law right of action in the husband for damages for loss of his wife's services and consortium was not taken away by our Married Woman's Emancipation Act, T. C. A. sec. 36-601 et seq., but still persists in the husband. City of Chattanooga v. Carter, 132 Tenn. 609, 179 S. W. 127; Johnson v. Southern Ry. Co., 155

Tenn. 639, 645, 299 S. W. 785, 55 A. L. R. 932; All v. John Gerber Co., 36 Tenn. App. 134, 252 S. W. (2d) 138.

Our conclusion is that the Trial Judge erred in directing a verdict for defendants. The judgment of the Circuit Court is reversed and the case is remanded to that Court for a new trial and further proceedings not inconsistent with this opinion. The costs are adjudged against the defendants, J. E. McKee and the Alabama Oil & Gas Company, Inc. Future costs will abide the outcome.

Hickerson and Shriver, JJ., concur.