

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

July 1, 1969

Honorable Robert S. Calvert          Opinion No. M-424
Comptroller of Public Accounts
State Capitol Building                Re:  Whether penalties for
Austin, Texas                              late payment of taxes
                                           should be assessed when
                                           the check in payment of
                                           taxes is dishonored by
                                           the drawee bank through
Dear Mr. Calvert:                          no fault of the taxpayer.

Your opinion request reads, in part, as follows:

"Two banks, each in a different city in
this State, have recently had occasion to freeze
the accounts of some or all of their depositors.
This became necessary, in each case, due to dif-
ficulties not involving the depositors in question,
and the accounts were rendered frozen suddenly,
without warning or notice being given to these
depositors.

"Prior to the action by the banks, several
depositors placed in the U. S. Post Office
quarterly sales tax reports and enclosed there-
with checks drawn upon their accounts with one of
the above banks in payment of the tax due as
reported.

"Following timely receipt by this office of
the quarterly reports and checks, one of the above
banks, upon presentment, failed and refused to
accept the checks, and the same were dishonored,
with the explanation that the depositor's account
would be frozen for a time due to bank difficulties
of an internal nature.

"It is expected that the same situation will
occur with regard to the second bank.  Correspondence
from the bank and two depositors leads us to this
conclusion.

* * *

- 2117 -

"Your official opinion is requested as to whether the statutory penalty for late payment, under Article 20.05(H), supra, must be assessed the taxpayer whose check was not honored by his bank when presented by this office."

By supplemental letter you have also advised us:

"In regard to the recent request for an opinion concerning the return of checks written in payment of sales taxes, please be advised that such request was made based upon our assuming that the checks in question were executed prior to the depositor's knowledge of his account being frozen, and that at the time the checks were executed there was sufficient funds on deposit with the bank to cover the same and at the time of presentment by this office to the bank there still remained sufficient funds to pay the checks."

For purposes of this opinion we are assuming as true the the same facts that you have assumed as true.

It is the opinion of this office that under the facts submitted no penalty should be assessed for late payment, provided that the checks are paid within a reasonable time after being dishonored, or the taxpayers make actual payment in money, either with or without use of the checks in question, within a reasonable time after notification that the checks have been dishonored.

The backdrop for this opinion is the well-settled rule that penalties and forfeitures are to be strictly construed against the State, and that doubts or ambiguities in this field will be resolved against the State by the courts. It has also been held that a penalty will not be inflicted where the failure is occasioned by circumstances beyond the control of the party or where the particular event causing the failure could not reasonably have been foreseen and guarded against. See 45 Tex.Jur.2d 5, Penalties, § 3; Hedgepeth v. Hamilton Warehouse Company, 104 Tex. 496, 140 S.W. 1084 (1911); Whitfield v. Terrell Compress Company, 62 S.W. 116 (Tex.Civ. App. 1901, error ref.); Conley v. Sherman S. & S. R. Company,

90 Tex. 295, 38 S.W. 519 (1897); Bloom v. Texas State Board of Pharmacy, 390 S.W.2d 252 (Tex.Sup. 1965); and Chesapeake and Ohio Railway Company v. Board, 100 W.Va. 222, 130 S.E. 524 (1925). The last cited case holds that where failure of performance was caused by the intervention of a vis major or Act of God, a recovery for penalty will be denied.

The leading case on this subject is Muldrow v. Texas Frozen Foods, 299 S.W.2d 275 (Tex.Sup. 1957). There, the court held that a check for taxes delivered to the collecting official on the last day allowed for payment and thereafter returned unpaid by the drawee bank does not constitute a timely payment of taxes, even though the check was dishonored solely because of a mistake on the part of the bank and was paid when presented a second time. The court held that under our Constitution and statutes payment of taxes must be in money and that no official can obligate the State to accept a check as either absolute or conditional payment. Since a check cannot be accepted as conditional payment of taxes, the court rejected the general doctrine of relation which is that when a check is accepted as conditional payment and the condition is satisfied when the check is paid, it is proper to treat the payment as having been made at the time the check was received. However, the court further held that if a check is given for purposes of paying taxes and is promptly paid when first presented in due course to the drawee bank, then for all practical purposes the funds are as readily available to the taxing authority as if payment had been made in money, and that, therefore, such a check would be the legal equivalent of money and the taxes would be considered as paid when the check was received by the collecting official. Thus, although a check can never constitute payment or conditional payment of taxes, the court nevertheless approved a limited form of the "relation back" doctrine, limited to checks paid when first presented in due course. The Muldrow case is in any event distinguishable from the situation here presented wherein apparently neither the taxpayer nor his agent, the bank, is at fault, and payment was delayed due to circumstances beyond his control.

In 1961, after the Muldrow decision, the Legislature enacted Article 1.13, Title 122A, Taxation-General, Vernon's Civil Statutes, and it was amended in 1967. The 1961

enactment was in substance what is now Section (a) of Article 1.13. Then in 1967, Sections (b) through (g) were added. It will be noted that Section (c) is not limited to the provisions relating to the time a report is placed in the United States mail. Section (c) deals with standards of care required of a taxpayer in making timely payments and with situations where payments will be deemed to have been timely filed. Therefore, the holding in Muldrow must now be interpreted and applied in the light of such statute.

Article 1.13 (a) and (c) are as follows:

"(a) Any report, required by any provision of this Title to be filed or made on or before a specific date shall be deemed timely filed if said report, shall be placed in the United State Post Office or in the hands of a common or contract carrier properly addressed to the Comptroller of Public Accounts on or before the date required for such payment, report, annual report, return, declaration, statement, or document to be filed or made.

\* \* \*

"(c) The person making the report shall be deemed to have substantially complied with the filing requirements as to timeliness if he exercised reasonable diligence to comply and through no fault of his own the reports were not timely filed."

Section (f) of Article 1.13 provides that:

"The term 'report' shall include any payment, report, annual report, return, declaration, statement or other document required by any provision of this Title to be filed with the Comptroller."

Therefore, the word "payment" can properly be substituted for the word "report" in Section (c), making it read as follows:

(c) The person making the "payment" shall be deemed to have substantially complied with

the filing requirements as to timeliness
if he exercised reasonable diligence to
comply and through no fault of his own the
"payments" were not timely filed.

We do not view Article 1.13 as altering the mode of
paying taxes; however, because payment is computed from
the time provided for filing of the tax reports, a sub-
stantial compliance rule for reports  logically governs
in connection with the time determinative for payment.
The delivery of money continues to be the only method of
effecting payment of taxes.  It follows that the "in fact"
time of payment is always when money is delivered, never
before.  However, Article 1.13 altered the rule as to when
payment shall be deemed as having been timely made insofar
as penalty assessments are concerned only.  The question of
timeliness now depends on the degree of diligence exercised
by the taxpayer and the presence or absence of fault on his
part.

Under the Muldrow decision if the money is readily
available to the taxing authority, then the time of payment
should be related to the time of the receipt of the check
by the taxing authority.  Our interpretation of Muldrow in
the light of Article 1.13 is that if the taxpayer has used
reasonable diligence to make the funds timely and readily
available, and if they are unavailable through no fault of
his, then the eventual payment of the check within a reason-
able time is related to the time the Comptroller receives
the check.

We cannot accept the concept that reasonable diligence
as to timely payment can only be exhibited by the timely
delivery of money or by the timely delivery of a check which
is paid when first presented in due course.

If actual payment in money, either by use of the check
or otherwise, is not received within a reasonable time after
the taxpayer is notified that the check has been dishonored,
then the taxpayer will not have exercised reasonable dili-
gence so as to excuse an untimely payment, and the time of
actual payment cannot be deemed to relate to any previous
time.

Our interpretation necessarily involves fact questions
dealing with reasonable diligence, taxpayer's fault, and
reasonable time.  These fact questions must first be determined

Hon. Robert S. Calvert, page 6 (M-424)


by the Comptroller and finally by the courts in the event
of a dispute between the taxpayer and the Comptroller.

In many cases the issues of reasonable diligence,
fault and reasonable time will be matters about which
reasonable minds can differ, depending on the facts of the
particular case. However, in our opinion, the facts stated
in your request reveal reasonable diligence and lack of
fault on the part of the taxpayers to the time of the dis-
honoring of the checks, as a matter of law. The fact
question of whether such payment in money is actually made
within a reasonable time is open and must be determined as
stated above.

We conclude that, under the facts stated in your request,
if the checks in question are paid within a reasonable time
after they were first dishonored by the bank or if payment
in money is otherwise made by the taxpayers within a reason-
able time after notice that the checks were dishonored, then
the time of such payment will relate to the time of the
receipt of the checks by the Comptroller.

SUMMARY

Under Article 1.13 of Title 122A, Taxation-
General, Vernon's Civil Statutes, no penalty
should be assessed for late payment of taxes
under circumstances where the taxpayer's return
and check in payment of the taxes are timely
filed with the Comptroller and where the tax-
payer had sufficient funds in the drawee bank
to pay the check but where the check was dis-
honored when presented for payment solely
because the bank account, after receipt of the
check, was suddenly frozen for a time due to
internal difficulties in the bank which did not
involve the taxpayer and over which he had no
control, provided that the check is paid within
a reasonable time after being dishonored or
the taxpayer makes actual payment in money,
either with or without use of the check, within
a reasonable time after notification that the
check has been dishonored. The fact question
of whether such payment in money is made within

- 2122-

a reasonable time must first be determined by
the Comptroller and later by the courts in the
event of a dispute between the taxpayer and
the Comptroller.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

AW:dc

Prepared by Alfred Walker
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman

James Broadhurst
Louis Neuman
Sam Kelley
Malcolm Quick

Hawthorne Phillips
Executive Assistant