**IN THE SUPREME COURT OF TENNESSEE**
**AT NASHVILLE**

**FOR PUBLICATION**

**FILED**

CONCRETE SPACES, INC., )
FAUX FUR, INC., PAULETTE )
DALTON, STUART DALTON, )
)
    Plaintiffs/Appellants, )
)
v. )
)
HENRY SENDER, Individually, )
DARREN LIFF, ZACKARY LIFF, )
HENRY SENDER, EUGENE SACKS )
and wife, RUTH SACKS, d/b/a LIFF, )
SENDER & SACKS, Tenants in )
Common, NATIONAL BUILDING )
CORP., )
)
    Defendants/Appellees. )

**Filed: August 30, 1999**

**August 30, 1999**

DAVIDSON COUNTY

Hon. Whitney Stegall
Chancellor **Cecil Crowson, Jr.**

**Appellate Court Clerk**

Supreme Court
No. 01S01-9812-CH-00224

FOR PLAINTIFFS/ APPELLANTS
Steve North &
Mark North
Madison, TN

Abby Rubenfeld
Nashville, TN

FOR DEFENDANTS/ APPELLEES
Charles Hampton White
Richard L. Colbert
David A. King
Cornelius & Collins
Nashville, TN

# OPINION

REMANDED FOR NEW TRIAL.

DROWOTA, J.

We granted this appeal to address the application of the election of remedies doctrine in Tennessee and to clarify the proper procedure to be implemented when a plaintiff is entitled to both punitive damages in conjunction with a common law claim and to multiple damages pursuant to a statutory remedy. We have determined that a plaintiff is entitled to a calculation of the amount of punitive damages and multiple damages that are warranted under each theory of liability. Only after these assessments are made is the plaintiff required to make an election of remedies. Because this procedure was not implemented in this case, we remand the cause to the trial court for a new trial.

### BACKGROUND

This action arose from a dispute over a lease involving space in Cummins Station, a piece of commercial property in Davidson County. Henry Sender, along with four other investors, purchased Cummins Station, a five-story building in downtown Nashville, in March 1993, with plans to renovate the eighty-six-year-old structure and to attract commercial tenants. Paulette Dalton, who owned a clothing boutique and an art gallery in downtown Nashville, learned in July 1993 that commercial space was available for lease in Cummins Station and became interested in relocating her businesses to the renovated building. Ms. Dalton had already begun negotiations with Gavin Gaskins, who managed several area nightclubs, to relocate her boutique and gallery to a location where they could be combined with a nightclub. Ms. Dalton and Mr. Gaskins thought the newly renovated Cummins Station would provide adequate space and a prime location for their project. They formed two corporations through which to conduct their various businesses; Ms. Dalton and her husband incorporated Concrete Spaces,

Inc. to manage the clothing boutique and art gallery, and Ms. Dalton and Mr. Gaskins incorporated Faux Fur, Inc. to manage the nightclub.

After inspecting the available space in Cummins Station and becoming satisfied that the property was suitable for their venture, Ms. Dalton and Mr. Gaskins began negotiations to enter into a lease with Henry Sender and his son-in-law, Michael Cooper, president of National Building Corporation ("NBC"), the company managing the Cummins Station renovation project. Ms. Dalton asserted her intent to open the businesses in October, and the leasing agents assured her that she would be able to occupy the proposed space by October 1, 1993.

After considerable negotiations, the parties executed two leases on August 26, 1993. The Daltons entered into one lease on behalf of Concrete Spaces, Inc. for the space to be used for the boutique and gallery, and Ms. Dalton and Mr. Gaskins entered into the other on behalf of Faux Fur, Inc. for the space to be used as a nightclub. Each lease was for a term of five years and provided for monthly rent of $1,222.50. The leases also stipulated that additional improvements would be made to the property and included an exhibit illustrating the areas to be refurbished.

In the months following the execution of the leases, several disputes arose between the parties over allocation of responsibility for the continued improvements on the rented space. One of the most significant disagreements concerned the obligation to pay for electrical work during renovation. Not surprisingly, construction was delayed. Nevertheless, Ms. Dalton was able to

-3-

conduct a grand opening of her clothing boutique and art gallery on October 22,1993.

Ms. Dalton successfully acquired insurance coverage for the inventory in her shops because she obtained assurances from NBC that the building was secure and that the fire sprinkler system was sufficient. Despite these representations, Ms. Dalton's boutique and art gallery were burglarized on two occasions in October 1993. All of her inventory was stolen, along with a safe containing $2,350 in cash, business documents, a stereo system and a cash register. Ms. Dalton contended that Henry Sender and NBC should incur responsibility for her extensive loss because she relied upon their assurances that the building was secure. The lessors refused to reimburse Ms. Dalton, insisting that her lease stipulated that she was responsible for the security of the space.

Ms. Dalton was unable to reopen the boutique and gallery and concentrated instead on preparing for the grand opening of the nightclub she was to operate with Mr. Gaskins. Because of construction delays, the club's opening was rescheduled from October 1993 until January 28, 1994. In the meantime, Ms. Dalton and Mr. Gaskins continued to disagree with their lessors about responsibility for the electrical work that had been completed in the leased space. Moreover, in early January 1994, Ms. Dalton was unable to obtain beer and dance permits because the lessors failed to provide her with a use and occupancy permit and a certificate from the fire marshal. Relations between the parties steadily worsened, culminating with Mr. Sender's refusal to meet with Ms. Dalton. In early November 1994, Mr. Gaskins informed Henry Sender that Faux Fur, Inc. was

-4-

terminating its lease due to continual breaches by the lessors. Mr. Sender asserted that he and NBC intended to hold Faux Fur, Inc. fully responsible for its obligations under the lease.

Through an attorney, Ms. Dalton informed the lessors on April 6, 1994, that they had breached the leases with Concrete Spaces, Inc. and Faux, Fur, Inc. by delaying construction and by failing to obtain a use and occupancy permit from the fire marshal. The attorney asserted that Ms. Dalton and Mr. Gaskins intended to vacate the leased premises on April 11, 1994.

The Daltons and the two corporations filed suit on April 7, 1994, in the Chancery Court for Davidson County against Henry Sender, NBC and the partnership that owned Cummins Station. The plaintiffs sought compensatory, punitive and treble damages under claims for breach of contract, negligent misrepresentation, fraudulent misrepresentation and violation of the Tennessee Consumer Protection Act. The essence of the Daltons' claim was that Mr. Sender and his business associates had deceived them about the quality and availability of the space in Cummins Station and that Mr. Sender had "intentionally carried on a systematic plan of harassment and lack of cooperation" to force them to abandon their leases in order to enable him to lease the space to others on more favorable terms. The lessors filed a counterclaim asserting that the plaintiffs had breached the leases.

Following a nine-day trial, the trial court properly instructed the jury on the elements of the plaintiffs' common law claims, including breach of contract,

intentional misrepresentation[1] and negligent misrepresentation and on the defendant's counterclaim for breach of contract. The court also properly instructed the jury that the plaintiffs were seeking punitive damages and that such damages could be awarded only if the jury made an underlying award of compensatory damages. However the trial court provided no initial instruction on the Tennessee Consumer Protection Act. After deliberations had begun, the jury requested a copy of the Consumer Protection Act. In response to this inquiry, the trial court merely gave a cursory explanation of the Act's purpose and informed the jury that it was required to determine whether the plaintiffs had proven, by a preponderance of the evidence, that the defendant engaged in an unfair and deceptive business practice.

Compounding the confusion surrounding the jury instructions, the special verdict form did not clarify the pivotal issues to be decided by the jury. Due to poor drafting, both grammatical and substantive, the jury was not given an opportunity to convey its findings under each theory of liability presented by the plaintiffs. The special verdict form, reviewed by the parties and submitted to the jury by the trial court, appears below with the jury's responses.

---

[1]The record indicates that the terms "intentional misrepresentation," "fraudulent misrepresentation" and "fraud" were used interchangeably by the court and parties in referring to this cause of action. Because these terms are synonymous, we will refer to this claim as intentional misrepresentation.

We, the jury, in the cause of *Concrete Spaces, Inc., et al. v. Henry Sender, et al.* find as follows:

1. We find for the plaintiff against the defendant and fix the compensatory damages at _**$75,000 plus accrued attorneys fees through case closure**_____.[2]

   OR

2. We find for the defendant against the plaintiff and fix the compensatory damages at _____.

3. We find that there was no meeting of the minds and, therefore, no contract.[3]

   YES _____       OR       NO __**X**___

4. If compensatory damages for the plaintiff were fixed by the jury, then the jury will answer this question. Are the plaintiffs due punitive damages.

   YES __**X**___       OR       NO _____

5. If you find that the plaintiffs are entitled to compensatory damages, did such damages arise from an unfair or deceptive act or practice by the defendants under the Tennessee Consumer Act [sic]?

   YES __**X**___       OR       NO _____

Since the jury awarded the plaintiffs $75,000 in compensatory damages and indicated that punitive damages were warranted, all parties consented to a hearing on punitive damages pursuant to Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901-902 (Tenn. 1992). At the conclusion of the hearing, the jury awarded the plaintiffs $1,100,000 in punitive damages. The trial court subsequently remitted that award to $500,000, the amount prayed for in the complaint.

---

[2]The jury later clarified that it intended to include the $26,000 the plaintiffs had incurred in attorneys fees up until trial in its award of $75,000, leaving a pure compensatory award of $49,000.

[3]The special verdict form did not provide the jury with an opportunity to communicate whether the contract had been breached.

The defendants appealed the judgment, primarily taking issue with the punitive damages award. The Court of Appeals first recognized that punitive damages are not available in conjunction with a claim under the Tennessee Consumer Protection Act. See Lorentz v. Deardan, 834 S.W.2d 316, 320 (Tenn. App. 1992); Paty v. Herb Adcox Chevrolet Co., 756 S.W.2d 697, 699 (Tenn. App. 1988). Because the jury awarded the plaintiffs punitive damages and also indicated, in response to Question Five, that the award of compensatory damages arose under the Tennessee Consumer Protection Act, the Court of Appeals deemed the verdicts inconsistent.

The intermediate court stated that an inconsistent verdict "resolves no conflicts and is no verdict at all," see McInturff v. White, 565 S.W.2d 478, 481 (Tenn. 1976), and emphasized that no effect can be given "to a jury's verdict based on irreconcilably inconsistent answers to special interrogatories." See Hock v. New York Life Ins. Co., 876 P.2d 1242, 1259 (Colo. 1994); Carr v. Strode, 904 P.2d 489, 503 (Haw. 1995); Shamrock, Inc. v. FDIC, 679 N.E.2d 344, 349 (Mass. Ct. App. 1994). Recognizing that verdicts have both a liability and a damages component,[4] the court concluded that the jury's inconsistent findings related only to damages and did not invalidate the verdict with respect to liability and compensatory damages. Because punitive damages and treble damages may not be recovered in the same action, see Lorentz, 834 S.W.2d at 320; Paty, 756 S.W.2d at 699, the Court of Appeals then vacated the award of punitive damages as incompatible with the finding that compensatory damages arose from a

---

[4] See All v. John Gerber Co., 36 Tenn. App. 134, 138, 252 S.W.2d 138, 139 (1952).

violation of the Consumer Protection Act and remanded the case for a determination of whether the compensatory damage award should be trebled in accordance with the Consumer Protection Act pursuant to Tenn. Code Ann. § 47-18-109(a)(3) & (4) (1995).[5]

Thereafter, we granted the plaintiffs' application for permission to appeal. Because the special verdict form employed at trial fails to provide information necessary to articulate a judgment in this case, we vacate the decisions of the trial court and the Court of Appeals and remand the case for a new trial.

## THE ELECTION OF REMEDIES DOCTRINE

We begin our analysis of the issues in this appeal with an overview of the relevant law. The doctrine of election of remedies is implicated when two inconsistent and irreconcilable remedies are available to the plaintiff to redress a single wrongful act. See Barger v. Webb, 391 S.W.2d 664, 667 (Tenn. 1965); Allied Sound, Inc. v. Neely, 909 S.W.2d 815, 822 (Tenn. App. 1995). The purpose of the doctrine is to prevent double redress for a single wrong, see Barger, 391 S.W.2d at 667; Barnes v. Walker, 199 Tenn. 364, 368, 234 S.W.2d 648, 650 (Tenn. 1950), and it requires the plaintiff in such a scenario to choose one theory of recovery under which to proceed. See Forbes v. Wilson County Emergency Dist. 911 Bd., 966 S.W.2d 417, 421 (Tenn 1998).

---

[5]Tenn. Code Ann. § 47-18-109(a)(3) (1995) provides that the trial court may award three times the amount of actual damages sustained if it finds that the defendant's use of the unfair or deceptive act or practice under the Act was willful or knowing.

At first glance there appears to be some discord between the doctrine of election of remedies and Tenn. R. Civ. P. 8.01, which grants a plaintiff wide latitude in pleading alternative claims for relief and pursuing an array of theories of recovery in a single action. A common example of this friction occurs when a plaintiff seeks multiple damages under an available statutory remedy as well as punitive damages pursuant to a common law claim. While this type of alternative pleading is available under Tenn. R. Civ. P. 8.01, double recovery may occur if the jury decides that the plaintiff is entitled to both punitive damages and multiple damages.

Almost every jurisdiction addressing this question has concluded that recovery of both multiple statutory damages and punitive damages constitutes an impermissible double recovery because the two forms of enhanced damages serve the same functions.[6] The purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter others from committing similar wrongs in the future. See Coffey v. Fayette Tubular Prod., 929 S.W.2d 326, 328 (Tenn. 1996); Hodges, 833 S.W.2d at 900. Several Tennessee

---

[6]See Stoner v. Houston, 582 S.W.2d 28 (Ark. 1979); Cieri v. Leticia Query Realty, Inc., 905 P.2d 29 (Haw. 1995); Ciampi v. Ogden Chrysler Plymouth, 634 N.E.2d 448 (Ill. App. Ct. 1994); Osborne v. Wenger, 572 N.E.2d 1343 (Ind. Ct. App. 1991); Johnson v. Tyler, 277 N.W.2d 617 (Iowa 1979); Ellis v. Northern Star Co., 388 S.E.2d 127 (N.C. 1990); Bjorgen v. Kinsy, 466 N.W.2d 553 (N.D. 1991); Wagoner v. Bennett, 814 P.2d 476 (Okla. 1991); Adamson v. Marianne Fabric, Inc., 391 S.E.2d 249 (S.C. 1990); Birchfield v. Texarkana Mem'l Hosp., 747 S.W.2d 361 (Tex. 1987); John Mohr & Sons, Inc. v. Johnke, 198 N.W.2d 363 (Wis. 1974). But see Neibel v. Transworld Assurance Co., 108 F.3d 1123, 1130 (9th Cir. 1997) (holding that a plaintiff may receive both treble damages under RICO and state law punitive damages for the same course of conduct); Freeman v. A. & M. Mobile Home Sales, Inc., 359 S.E.2d 532, 536 (S.C. Ct. App. 1987) (upholding an award of punitive damages based on common law fraud and of treble damages pursuant to the South Carolina Unfair Trade Practice Act only because the defendants never filed a motion requiring the plaintiff to elect her remedy); Berry Property Management, Inc. v. Bliskey, 850 S.W.2d 644, 665 (Tex. Ct. App. 1993) (holding that both punitive and treble damages were recoverable under the Texas Deceptive Trade Practices Act because each of the plaintiff's claims resulted from a distinct act; however because the plaintiff suffered only one compensable injury, she could only be awarded one recovery for actual, compensatory damages).

statutory schemes achieve the same objectives of punishment and deterrence through multiple damage provisions, which allow for compensatory damages to be trebled if the defendant's conduct rises to a specified level of culpability.[7] Because multiple damages are punitive in nature and not intended to compensate for the plaintiff's injury, see Smith Corona Corp. v. Pelikan, Inc., 784 F. Supp. 452, 483 (M.D. Tenn. 1992); Lien v. Couch, 993 S.W.2d 53, 58 (Tenn. App. 1998), a plaintiff cannot recover both punitive damages and multiple damages in the same cause of action, even if they are each available, because receipt of both forms of enhanced damages violates the principle against double recovery. See Edwards v. Travelers Ins. of Hartford, Conn., 563 F.2d 105, 119-120 (6th Cir. 1977); Lorentz, 834 S.W.2d at 320 (Tenn. App. 1992).

The Tennessee Consumer Protection Act provides that the trial court may award three times the amount of actual damages sustained if a defendant's use of the unfair or deceptive act or practice under the Act was willful or knowing. Tenn. Code Ann. § 47-18-109(a)(3)(1995). See also Smith v. Scott Lewis Chevrolet, Inc., 843 S.W.2d 9, 12 (Tenn. App. 1992). This allowance for treble damages is intended to be punitive rather than compensatory. See Smith Corona Corp., 784 F. Supp. at 483-84; Lien, 993 S.W.2d at 58. Accordingly, a plaintiff is precluded

---

[7]See, e.g., Tenn. Code Ann. § 8-50-603 (1993) (employee is entitled to treble damages and attorneys fees if employer disciplined or threatened to discipline or otherwise interfered with employee's right to communicate with an elected official); Tenn. Code Ann. § 46-2-411 (Supp. 1998) (court shall award treble damages when a prevailing party proves fraud relative to a sales contract for cemetery merchandise and services); Tenn. Code Ann. § 47-29-101(d) (Supp. 1998) (court shall award as damages treble the face amount of a check or draft when person who executed and delivered the check possessed fraudulent intent in not paying the holder the full amount within 30 days); Tenn. Code Ann. § 48-101-520(b)(1) (1995) (court may award treble damages if defendant's use of an unfair, false or misleading solicitation of charitable funds was willful or knowing); Tenn. Code Ann. § 62-37-105(e) (1990) (one who engages in the construction or home improvement business without a license may be subject to treble damages).

from recovering both types of enhanced damages under the Act.  <u>See</u> <u>Lorentz</u>,

834 S.W.2d at 320*;* <u>Paty</u>, 756 S.W.2d at 699.[8]


When a plaintiff is entitled to both punitive damages in conjunction with a

common law claim for relief and to treble damages under a statutory scheme, the

majority of jurisdictions employ a version of the election of remedies doctrine to

prevent double recovery of enhanced damages.  Commentators suggest that two

general trends have developed with respect to how and when the plaintiff's

election is to be implemented.[9]  The most prevalent approach allows the plaintiff to

submit to the fact finder all theories of recovery, including the standards for both

punitive damages and multiple damages.  If the jury (and judge, in some

instances) determines that the plaintiff is entitled to both forms of enhanced

damages, the plaintiff may request that the amount of damages under each

---

[8]Some courts have interpreted a statute declaring itself to be a non-exclusive remedy to entitle plaintiffs to recover both treble damages under the statute and punitive damages pursuant to a common law claim in a single action.  <u>See, e.g.</u> <u>Rhue v. Dawson</u>, 841 P.2d 215, 228 (Ariz. 1992) (holding that plaintiff could recover both treble damages under state racketeering statute and punitive damages under fraud and breach of fiduciary duty claims because the statute provided that actions brought under it are "remedial and not punitive" and that civil remedies provided under it are "supplemental and not mutually exclusive"); <u>Toyota of Florence v. Lynch</u>, 442 S.E.2d 611, 616 (S.C. 1994) (holding that plaintiff could recover both doubled damages under the state "Regulation of Manufacturers, Distributors and Dealers Act" and punitive damages in connection with the common law claim because the Act expressly allows both types of damages). Ensuring that the Tennessee Consumer Protection Act will not inhibit plaintiffs from pleading other theories of recovery in addition to the Act, the General Assembly included decisive language in the Act that provides that "[t]he powers and remedies provided in this part shall be cumulative and supplementary to all other powers and remedies otherwise provided by law." Tenn. Code Ann. § 47-18-112 (1995). <u>See also</u> <u>Myint v. Allstate Ins. Co.</u>, 970 S.W.2d 920, 926 (Tenn. 1998); <u>Morris v. Mack's Used Cars</u>, 824 S.W.2d 538, 539-40 (Tenn. 1992); <u>Laymance v. Vaughn</u>, 857 S.W.2d 36, 37 (Tenn. App. 1992). However the non-exclusive nature of the Tennessee Consumer Protection Act does not override the well-settled principle that recovery of both multiple damages pursuant to a statute and of punitive damages in connection with common law claims amounts to an improper duplicative recovery. <u>See</u> <u>Smith Corona Corp.</u>, 784 F. Supp. at 483; <u>Lien</u>, 993 S.W.2d at 58.  Even though a plaintiff may pursue any number of common law claims in conjunction with the statutory cause of action, the plaintiff will be required to select either treble damages or punitive damages, in the event each are awarded.

[9]<u>See generally</u> Lisa K. Gregory, Annotation, <u>Plaintiff's Rights to Punitive or Multiple Damages When Cause of Action Renders Both Available</u>, 2 A.L.R. 5th 449, 459 (1992).

remedy be determined before making an election of which remedy he or she

would like the judgment to reflect.[10]

Two objectives are achieved by allowing the plaintiff to select an award of

damages after the judge and jury have decided all the issues surrounding liability

and the entitlement and amount of enhanced damages:  one, improper double

recovery is prevented, and two, the goal of deterrence is realized.  See Eastern

Star, Inc. v. Union Bldg. Materials Corp., 712 P.2d 1148, 1159 (Haw. 1985).  Most

courts that have adopted this approach agree with the rationale of the court in

Mapp v. Toyota World, Inc., 344 S.E.2d 297, 301 (N.C. 1986), which observed

that  "it would be manifestly unfair to require plaintiffs in such cases to elect before

---

[10]See Grogan v. Garner, 806 F.2d 829, 839 (8th Cir. 1986) (recognizing that when a statutory federal securities claim overlaps with a pendent state law claim, once a determination of liability and damages is made under each claim, the plaintiff is "entitled to the greatest amount recoverable under any single theory pled ...."); SuperTurf, Inc. v. Monsanto Co., 660 F.2d 1275, 1284 (8th Cir. 1981) (holding that the trial court erred by denying plaintiff's request to instruct the jury on all its claims and to submit a special verdict form and by instead requiring the plaintiff to elect between its statutory antitrust claim and its common law tort claims to be submitted to the jury); Bill Terry's, Inc. v. Atlantic Motor Sales, Inc., 409 So.2d 507, 509 (Fla. Dist. Ct. App. 1982) (concluding that plaintiff may submit all claims to the jury and that plaintiff is entitled to the higher award between punitives in connection with the common law fraud claims and treble damages under the Federal Odometer Disclosure Statute); Cieri v. Leticia Query Realty, Inc., 905 P.2d 29, 46 (Haw. 1995) (holding that a plaintiff is entitled to either statutory treble damages or punitive damages, whichever is the greater);  Harris v. Manor Healthcare Corp., 489 N.E.2d 1374, 1381 (Ill. 1986)(holding that where plaintiffs were entitled to recover both treble damages and punitive damages under the Illinois Nursing Home Care Reform Act, both issues could be submitted to the jury and the plaintiff could choose which award to be reflected in the judgment); Hale v. Basin Motor Co., 795 P.2d 1006, 1012 (N.M. 1990) (holding that where a plaintiff is entitled to treble damages under its state Unfair Trade Practices Act and to punitive damages under common law claims of fraud, trial court should have submitted each theory of recovery to the jury and then allowed plaintiff to elect between the awards with duplicative elements); Ace Chem. Corp., v. DSI Transports, Inc., 446 S.E.2d 100, 105 (N.C. Ct. App. 1994) (holding that trial court erred by requiring plaintiff to select which remedy to submit to the jury because plaintiff was allowed to elect its remedy between punitive damages and statutory treble after the jury's verdict on all claims was rendered).  Some courts merely state that the higher award should automatically be reflected in the final judgment. See Purina Mills, Inc. v. Odell, 948 S.W.2d 927, 940 (Tex. Ct. App. 1997) (holding that when a prevailing party fails to elect between alternative measures of damages, the court must enter judgment reflecting the findings affording the greater recovery); Birchfield v. Texarkana Mem'l Hosp., 747 S.W.2d 361, 367 (Tex. 1987) (holding that where a prevailing party fails to elect between alternative measures of damages, the court should utilize the findings affording the greater recovery and render judgment accordingly).

-13-

the jury has answered the issues and the trial court has determined whether to treble the compensatory damages found by the jury . . . ."  Moreover, submitting incompatible and alternative theories of recovery to a jury creates no conflict or duplicative award because until the jury makes its findings of liability, no double recovery can exist.  Any duplicative aspect of the jury's findings is eliminated when the plaintiff makes an election.  See Butler v. Joseph's Wine Shop, Inc., 633 S.W.2d 926, 933 (Tex. App. 1982).  Another advantage to letting the fact finder decide each theory of recovery is that all the findings on liability and damages are preserved for review.  See SuperTurf, 660 F.2d 1275, 1279 (8th Cir. 1981).

A very small minority of jurisdictions requires plaintiffs to make an election of remedies before the issues are submitted to the fact finder.[11]  See Rivers v. Ex-Cell-O Corp., 300 N.W.2d 420 (Mich. Ct. App. 1980); Johnson v. Jensen, 446 N.W.2d 664 (Minn. 1989).  The theory behind this approach is that plaintiffs should not be entitled to implement, with the benefit of hindsight, their most advantageous remedy.  See Johnson, 446 N.W.2d at 666.

We agree with the reasoning of the majority of jurisdictions confronted with this issue that it would be unfair to require election before a determination of liability and entitlement to punitive damages and multiple damages has been made.  In so concluding, we agree with the plaintiffs that this approach does not

---

[11] See generally Gregory, supra note 9.  The Court of Appeals seemed to adopt the minority approach of the election of remedies doctrine.  It instructed that "[i]n order to prevent a double recovery of exemplary damages, the trial court should require the plaintiff to decide whether it will pursue punitive damages in accordance with the Hodges v. S.C. Toof & Co. decision or whether it will pursue treble damages in accordance with Tenn. Code Ann. § 47-18-109(a)(3) & (4)."  This language implies that plaintiffs are not entitled to an assessment by the jury and judge of the amounts of each form of enhanced damages before making an election of remedies.

-14-

unduly burden a defendant who has been found liable under more than one theory of recovery. The majority rule simply allows a plaintiff to realize the maximum recovery available under the fact finders' findings. Given the punitive and deterrent purposes of punitive and multiple damages, such a result is entirely proper.

The majority approach is also consistent with our Rules of Civil Procedure, which reflect the notion that plaintiffs are free to pursue several alternative theories of recovery and to structure their claims in the manner that is most beneficial to them.[12]  Again, the election of remedies doctrine serves only to prevent double redress for a single wrong. See Wimley v. Rudolph, 931 S.W.2d 513, 515 (Tenn. 1996); Allied Sound, Inc., 909 S.W.2d at 822. If a defendant has been found liable under more than one theory of recovery, no inequity results from allowing the plaintiff to choose one of the claims upon which to realize its maximum recovery of enhanced damages. In other words, no danger of double recovery exists unless the plaintiff actually realizes satisfaction of both forms of enhanced damages. See Freeman v. Myers, 774 S.W.2d 892, 895  (Mo. App. 1989).

## PROCEDURE IN SUITS INVOLVING MULTIPLE CLAIMS

When a plaintiff pursues relief under more than one theory of recovery, the risk is great that the jury will become confused as to the types of enhanced damages permissible under each theory of liability. This risk is of particular

---

[12]Tenn. R. Civ. P. 8.01 provides that "relief in the alternative or of several different types may be demanded."

concern when the jury is merely asked to return a general verdict.  When using a general verdict it is difficult to ascertain which portion of a compensatory award is attributable to a violation of the relevant statute, which might be trebled, and which portion is attributable to the defendant's breach of a common law duty, which might serve as a basis for an award of punitive damages.  Both to preserve the jury's findings and to facilitate the plaintiff's ability to elect damages, it is essential that the jury's liability determinations reflect the underlying claims upon which they are based. No two jury trials will be alike, and there are no blanket rules or catch-all standards that can be articulated to fully explain how instructions and special interrogatories should be presented to juries in every case.  However, in order to avoid the confusion that has occurred in this case, the following general, common sense principles should guide attorneys and judges in preparing both jury instructions and special verdict forms in cases involving multiple theories of liability and various types of damages.

Courts should provide separate jury instructions for each theory of liability that clearly explain the elements of each claim, thus enabling the jury to consider whether the plaintiff has met its burden of proof with respect to each.  The standards for any available enhanced damages should be explained in conjunction with the instructions for each underlying theory of recovery.  For example, the intentional, fraudulent, malicious or willful standard for punitive damages required by Hodges, 833 S.W.2d at 900-901, should be explained within the separate instructions for the underlying common law claims.  Likewise, if the jury is to decide the requisite culpability for multiple damages under a statute, an

explanation of that standard should be given in conjunction with the instructions for that particular statutory claim.[13]

As the Court of Appeals in this case recognized, the most effective approach in dealing with multiple claims for relief is to require the jury to respond either to a general verdict form accompanied by special interrogatories or to a special verdict form that has been prepared to parallel the instructions to the jury on each claim. Tenn. R. Civ. P. 49 accords trial courts great latitude in using special verdict forms and tailoring special interrogatories to meet the needs of each unique case.[14] See Petty v. Estate of Nichols, 569 S.W.2d 840, 847 (Tenn. App. 1977). As the intermediate court summarized:

> Special verdict forms should use the same terms as those used in the jury instructions. See Lundquist v. Nickels, 605 N.E.2d 1373, 1389 (Ill. Ct. App. 1992). They should repeat and highlight the salient issues discussed in the instructions. See Kass v. Great Coastal Express, Inc., 676 A.2d 1099, 1107 (N.J. Super. 1996). Inconsistencies with jury instructions and the special verdict form may confuse the jury. See Ladd v. Honda Motor Co., 939 S.W.2d 83, 103 (Tenn. App. 1996).

---

[13]While we agree with the Court of Appeals that carefully prepared jury instructions and companion special verdict forms can alleviate confusion when juries must apply different standards under multiple claims for relief, we disagree with the intermediate court's statement that the jury assesses whether the defendant's conduct met the knowing and willful standard necessary to impose treble damages under the Consumer Protection Act. Tenn. Code Ann. § 47-18-109(a)(3) (1995) provides that it is the trial court, and not the jury, that determines whether the defendant's violation was knowing and willful. If the trial court finds the requisite culpability, it may then apply the factors set forth at Tenn. Code Ann. § 47-18-109(a)(4) to decide whether to award treble damages. The Court of Appeals' opinion therefore incorrectly instructs trial courts to submit to the jury the issue of whether a defendant has acted in a knowing and willful manner in suits involving the Consumer Protection Act.

[14]Tenn. R. Civ. P. 49.01 permits trial courts to require the use of a special verdict form comprised of detailed factual questions for the jury. Special verdicts elicit specific findings from the jury that cover every factual issue raised by the pleadings and evidence, including responses to each element of the common law claims plead. These responses enable the trial court to articulate a judgment as a matter of law. More common than special verdicts, general verdicts accompanied by special interrogatories are permitted by Tenn. R. Civ. P. 49.02. General verdicts and interrogatories, which are usually more concise than special verdicts, call upon the jury to render a general finding of liability and also require the jury to answer certain key questions that clarify the basis for the finding of liability and that are "necessary to a verdict." The purpose of the interrogatories is to test the validity and consistency of the general verdict.

If a statutory remedy requires the jury to make a determination of the requisite culpability for multiple damages, the jury should be required to make that determination on its special verdict form. Alternatively, if the statute requires the trial court to assess whether multiple damages are warranted, as does the Tennessee Consumer Protection Act, then the issue of multiple damages should be decided by the trial court, after the jury renders an initial determination of liability, regardless of whether the jury has also awarded punitive damages pursuant to a common law claim. In the same manner, if punitive damages are sought, and the jury finds that the defendant acted intentionally, fraudulently, maliciously or recklessly in accordance with Hodges, 833 S.W.2d at 901, the plaintiff may then request a hearing to calculate the amount of the award. Only after the amount of punitive damages and multiple damages have been assessed is the plaintiff required to make an election between the two types of remedies.

## CONCLUSION

Applying the above-stated principles to the facts in this case, we first note that it is difficult to sift through the array of problems that characterize the special verdict form at issue this case. Despite the plaintiff's assertion that the verdict form "covered every contested issue that needed to be presented to the jury," the verdict form failed to address at least four of the central issues in the case: whether the plaintiffs or defendants breached the lease agreement, whether the defendants were liable for negligent misrepresentation and whether the defendants were liable for intentional misrepresentation. Finally, and most importantly, the special verdict form did not require the jury to specify whether it based the award of punitive damages upon a common law claim.

-18-

Tennessee law is well-established that litigants are entitled to have their rights settled by a consistent and intelligible verdict and that verdicts that are inconsistent and irreconcilable cannot stand.  See  Milliken v. Smith, 218 Tenn. 665, 668, 405 S.W.2d 475, 476 (1966); Alabama Highway Express, Inc. v. Luster, 51 Tenn. App. 691, 696, 371 S.W.2d 182, 183 (1963); Penley v. Glover, 30 Tenn. App. 289, 292, 205 S.W.2d 757, 759 (1947).  Where a judgment is based upon inconsistent findings by a jury it is the duty of the appellate court to reverse and remand the case for a new trial.  See McInturff, 565 S.W.2d at 482; Berry v. Foster, 199 Tenn. 352, 356, 287 S.W.2d 16, 18 (1955); Penley, 30 Tenn. App. at 292, 205 S.W.2d at 759.

A new trial is also warranted when verdict forms are composed in such a faulty fashion that they do not address each of the plaintiffs' theories of recovery and do not allow the jury to adequately respond to each claim.  Well-settled law requires courts to construe the terms of a verdict in a manner that upholds the jury's findings, if it is able to do so.  See Briscoe v. Allison, 200 Tenn. 115, 125-26, 290 S.W.2d 864, 868 (1956).  Even if a verdict is defective in form, it is to be enforced if it sufficiently defines an issue in such a way as to enable the court to intelligently articulate a judgment.  See Arcata Graphics Co. v. Heidelberg Harris, Inc., 874 S.W.2d 522, 527 (Tenn. App. 1993).

After closely reviewing the record, we conclude that the Court of Appeals erred in vacating only the award of punitive damages.  The Court of Appeals concluded that the punitive damages award was improper because punitive damages are not available under the Consumer Protection Act, see Lorentz, 834

-19-

S.W.2d at 320; Paty, 756 S.W.2d at 699. This conclusion assumes that the entire award of compensatory damages was based on the jury's finding of a violation of the Consumer Protection Act. While the jury certainly found a violation of the Consumer Protection Act, the special verdict form did not afford the jury an opportunity to indicate whether the award of compensatory damages also arose from one of the plaintiffs' common law claims, such as the claim for intentional misrepresentation, which would support an award of punitive damages. Because of the deficient verdict form, essential information was not elicited from the jury, and the theories supporting the jury's award of compensatory damages cannot be ascertained. In our view, it is speculative to conclude, as did the Court of Appeals, that the compensatory award was premised solely on a violation of the Tennessee Consumer Protection Act and that the award of punitive damages was improper.[15]

We agree with the Court of Appeals that the trial court failed to instruct the jury that punitive damages are not available under the Act, and we emphasize that the trial court should have made clear to the jury that it could not award punitive damages based upon a violation of the Consumer Protection Act. The trial court's omission certainly leaves open the possibility that the jury wrongly awarded punitive damages in conjunction with the Consumer Protection Act rather than in

_____

[15]The Court of Appeals mistakenly believed that a verdict form containing a misstatement of the law contributed to the jury's misunderstanding about the relationship between the Consumer Protection Act and punitive damages. The record reveals that due to some oversight the trial court read a verdict form to the jury that erroneously indicated that punitive damages were available under the Consumer Protection Act. However the error was immediately brought to the trial court's attention and an explanation and corrected reading were provided to the jury. The special verdict form that contained the error was never submitted to the jury. To the contrary, although the jury was provided with two separate verdict forms during its first two days of deliberation, the two forms were identical and bore the corrected version of the special interrogatories. Therefore, contrary to the Court of Appeals' conclusion, the jury was never given a verdict form that contained a misstatement that punitive damages are available under the Tennessee Consumer Protection Act.

connection with a common law claim for recovery. Although we cannot assume that the jury understood the relevant law, since it was not properly instructed, we decline to assume the inverse, as did the Court of Appeals, that the jury found <u>only</u> a violation of the Consumer Protection Act. The verdict form utilized in this case is simply too ambiguous and incomplete to support such a conclusion. Without a clear record of the theories supporting the jury's finding of liability, we cannot determine which form of enhanced damages is warranted in this case. Accordingly, we have no choice but to remand this case for a new trial in which the issues can be clearly articulated and a decisive verdict can be rendered. Upon remand, the trial court should make every effort to comply with the guidelines set forth in this opinion and to facilitate the plaintiffs' election of remedies in the event they become entitled to both punitive damages and treble damages under the Tennessee Consumer Protection Act. Costs of this appeal are taxed equally against the defendants.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C. J.
Birch, Holder, Barker, JJ.